Francisco **PUJOL, et al.,**
**Plaintiffs, Appellants,**

v.

**SHEARSON/AMERICAN EXPRESS,**
**INC., et al., Defendants, Appellees.**

No. 87–1190.

United States Court of Appeals,
First Circuit.

Argued July 30, 1987.

Decided Sept. 29, 1987.

Diane H. Tutt with whom Blackwell, Walker, Fascell & Hoehl, Miami, Fla., Wallace Gonzalez Oliver, San Juan, P.R., Harold D. Vicente, and Harold D. Vicente Law Offices, Santurce, P.R., were on brief, for plaintiffs, appellants.

Roger D. Netzer with whom Philippe M. Salomon, Willkie Farr & Gallagher, New York City, Jay Garcia Gregory and Fiddler Gonzalez & Rodriguez, San Juan, P.R., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, and BOWNES and NOONAN,[*] Circuit Judges.

BOWNES, Circuit Judge.

Plaintiffs-appellants Francisco Pujol and his wife Ana Bonelli de Pujol (Bonelli), individually and as representatives of the conjugal partnership constituted between them, appeal from the dismissal of their complaint and the denial of their motion for partial summary judgment against defendants-appellees Shearson/American Express, Inc., and several individual Shearson executives. Appellants had sued in United States District Court for the District of Puerto Rico, alleging nine causes of action, including both federal and Commonwealth claims, growing out of the employment relationship between Pujol and Shearson.

## I. FACTUAL BACKGROUND

In reviewing a ruling on a motion to dismiss, we treat all well-pleaded allegations in the complaint as true. *See, e.g., Bricker v. Crane,* 468 F.2d 1228, 1232–33 (1st Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973).

In 1980, Pujol joined Shearson (Puerto Rico) and Shearson/American Express as Executive Vice President/Investment

---

[*] Of the Ninth Circuit, sitting by designation.

Banking and Vice President, respectively. In 1983, Pujol became President of Shearson (Puerto Rico) and resident manager of Shearson's Puerto Rico branch. Shortly after assuming these posts in 1983, Pujol perceived serious deficiencies in the "internal controls" of both Shearson companies in Puerto Rico. Pujol notified Shearson's top management that Shearson was selling securities to residents of Puerto Rico on the basis of fraudulent misrepresentations that the income therefrom was tax-exempt. As early as 1982, Pujol had notified Shearson executives that the income was taxable. Pujol refused to sign an explanatory letter to clients because he felt that it did not unequivocally disclose the taxable nature of the income.

Pujol also notified Shearson executives that there had been a number of banking transactions involving misuse of funds in violation of the United States Internal Revenue Code, the Puerto Rico Industrial Incentives Act and Regulation 2848 of the Department of Treasury of Puerto Rico. Pujol was instructed not to take any corrective action and not to report the irregularities to the appropriate authorities.

At a meeting on October 26, 1983, Pujol submitted a letter to Shearson executives stating that Shearson's Puerto Rico counsel should be consulted as to whether the facts ascertained by an internal audit should be immediately reported to federal and/or Commonwealth authorities. Copies of the letter were sent to Shearson's Puerto Rico counsel and other Shearson executives.

Immediately after submitting the letter, Pujol was notified that he was being temporarily "suspended" from his duties at Shearson until the completion of the internal audit. Early that same afternoon, persons acting under instructions from the Shearson audit team changed the locks on Pujol's office door. Two days later an article in a local newspaper reported the uncovering of a scandal at Shearson in terms implicating Pujol. The article was then reported in other newspapers and broadcast media.

Pujol reported his findings to the Department of Treasury of Puerto Rico. Shear-son filed a response stating that Pujol was directly and indirectly involved in the irregularities discovered at Shearson.

Shearson notified Pujol that it had decided to revoke Pujol's American Express card and to retain more than $35,000 that Pujol had in an account with Shearson. Shearson also seized and withheld personal property and files, belonging to both Pujol and Bonelli, that Pujol had kept in his office. Pujol's and Bonelli's files were ransacked and copies were made of their personal and confidential documents.

## II. PROCEEDINGS BELOW

### A. Summary

We summarize the complicated procedural history of this case, involving at least three separate legal forums, in chronological order.

On November 10, 1983, Pujol instituted proceedings in the Superior Court of Puerto Rico seeking the return of his personal property kept at his former office and a copy of the report submitted by Shearson to the Puerto Rico Treasury Department. Bonelli and the conjugal partnership later joined as plaintiffs in this action.

On November 25, 1983, Shearson submitted a petition to the Arbitration Director of the New York Stock Exchange initiating an arbitration proceeding against Pujol. This request was submitted pursuant to a clause in Pujol's employment contract stating:

> Any controversy between me [i.e., Pujol] and any member organization arising out of my employment or the termination of my employment shall be settled by the arbitration procedure prescribed in the Constitution and rules then obtaining of the [New York Stock] Exchange.

On December 9, 1983, the Puerto Rico Superior Court dismissed Pujol's first request as moot in view of Shearson's offer to return the property in question. It ordered the report to the Treasury Department to be delivered to Pujol in twenty days.

On December 23, 1983, Pujol requested leave from the Superior Court to file an amended complaint seeking an injunction against Shearson from arbitrating the dispute in New York. The Superior Court denied this request on January 30, 1984, basing its ruling on the terms of Pujol's employment contract.

On March 26, 1984, Pujol and Bonelli instituted the present action in United States District Court on behalf of themselves and their conjugal partnership. Their complaint listed the following nine causes of action against Shearson and the individual defendants:

(1) Treble damages action for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–64 (RICO);

(2) Violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 15 C.F.R. § 240.-10b–5;

(3) Wrongful discharge and breach of employment agreement;

(4) Libel and slander;

(5) Invasion of privacy;

(6) Conversion, wrongful attachment and other wrongful uses of legal process;

(7) Negligent infliction of emotional distress;

(8) Wrongful arrest;

(9) "Shearson's ongoing campaign to discredit and disgrace Pujol."

In October, 1984, Pujol submitted a reply and seven counterclaims in the arbitration proceedings. The counterclaims asserted claims identical to the third through ninth causes of action contained in the district court complaint, with all references to Bonelli and the conjugal partnership deleted. In November, 1985, the panel of arbitrators dismissed Shearson's claims and found Shearson liable to Pujol, pursuant to the counterclaims, in the amount of $1,197,-914.40 plus interest and costs in the amount of $18,700. The arbitrators made no factual findings in conjunction with their award. On July 10, 1987, the award was confirmed by the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida. Shearson has appealed to the Third District Court of Appeal of Florida.

### B. The Rulings of the Puerto Rico District Court

On September 17, 1984, appellees moved in Puerto Rico District Court to dismiss the complaint or, in the alternative, to stay the proceedings pending the outcome of arbitration. In December, 1985, appellants moved for partial summary judgment based on the collateral estoppel effect of the November, 1985, arbitration award. Appellees also moved for summary judgment. In February, 1987, the district court granted appellees' motion to dismiss all causes of action and, consequently, denied the motions for summary judgment.

Appellants appeal from the dismissal of the RICO action (first cause of action) and the dismissal of the third through ninth causes of action insofar as those claims relate to the claims of Bonelli and the conjugal partnership. Appellants also contest the denial of their motion for partial summary judgment. They do not challenge the dismissal of the second cause of action, the claim for securities violations.

### III. THE RICO CLAIM

The central issue on appeal in relation to the RICO claim is that of standing. Civil remedies under RICO are provided for by 18 U.S.C. § 1964(c):

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Court explained the standing requirement implied by this provision:

If the defendant engages in a pattern of racketeering activity in a manner forbidden by [§ 1962], and the racketeering

activities injure the plaintiff in his business or his property, the plaintiff has a claim under § 1964(c).... [T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

*Id.* at 495–96, 105 S.Ct. at 3285–86.

There are, thus, two requirements for standing under § 1964(c): (1) a plaintiff must show that there has been a violation of § 1962, and (2) he must show that his injury was caused by the violation. A violation of § 1962 occurs if the defendant committed at least two "predicate acts." Conduct which can constitute a "predicate act" is described in § 1961(1).

■ As the district court stated, the acts underlying appellants' RICO claim are: (1) fraud in the sale of securities, and (2) mail and wire fraud. These violations are valid "predicate acts" under § 1961(1). We find, however, that the complaint does not allege the requisite connection under *Sedima* between these underlying violations and the injuries allegedly suffered by appellants.

The complaint alleged that Shearson and its agents violated the law by engaging in illegal banking transactions, defrauding investors and furthering such misdeeds through the use of the mail and wires. Pujol, however, was not a defrauded client or investor and was not a target of any of the acts pleaded as "predicate acts" in the RICO claim. Rather, the complaint alleged that he was fired, slandered and otherwise injured because of the actions he took to report and to stop the illegal schemes. Such injurious acts, taken as alleged, were clearly wrong; indeed, Pujol won a rather substantial recovery in arbitration on claims based on the same facts alleged in his RICO claim. The acts that injured Pujol, however, were not caused by the "predicate acts" alleged in the complaint within the meaning of *Sedima*'s causation requirement.

In finding that Pujol did not have RICO standing here, we are following our recent decision in *Nodine v. Textron, Inc.,* 819 F.2d 347 (1st Cir.1987). Nodine, like Pujol, had been fired for reporting an illegal scheme to his superiors. We found, however, that Textron's decision was an action independent of that illegal scheme as alleged by the complaint. We held that "[f]iring Nodine under these circumstances was wrong, but it did not violate the RICO act" and that Nodine, therefore, did not have standing under § 1964(c). *Id.,* at 349 (citing *Morast v. Lance,* 807 F.2d 926, 932–33 (11th Cir.1987)).

Appellants attempt to distinguish *Nodine* from the present case. They claim that Nodine was fired in retaliation for reporting the illegal conduct, whereas Pujol was dismissed to prevent him from reporting such violations. We doubt whether this distinction is one which could have any meaningful concrete application. The complaint in the present case, and, we presume, in most similar cases, may be construed as alleging either a "preventive" or a "retaliatory" dismissal. Moreover, even were we to assume the validity of the distinction, we would not find that a "preventive" dismissal would suffice, under *Sedima* and *Nodine,* to warrant calling it an act committed "by reason of" a securities violation or mail and wire fraud.

■ During their oral argument, appellants made a second attempt to distinguish *Nodine* based on dicta in that opinion. In *Nodine,* we stated that allegations of obstruction of justice might satisfy *Sedima*'s standing requirement in certain cases involving dismissals of employees for reporting violations. *Nodine,* 819 F.2d at 349 n. 3. The fatal problem with appellants' argument, however, is that their complaint makes no mention, as underlying "predicate acts," of obstruction of justice (18 U.S.C. § 1503), obstruction of criminal investigations (18 U.S.C. § 1510) or obstruction of state or local law enforcement (18 U.S.C. § 1511), all of which are valid "predicate acts" under § 1961.

Appellants argued, nonetheless, that the complaint could be construed as containing the elements of such violations, even though it did not state so directly. We reject this argument. Appellants, in effect, are asking us to rewrite their complaint by

inserting legal claims not mentioned therein on the basis of an argument presented for the first time at appellate oral argument.[1]

Such a step by us would be particularly inappropriate given the procedural history of this case. Appellants filed their complaint in district court in November, 1983. Appellees filed their motion to dismiss in September, 1984. In their motion to dismiss, appellees argued that the complaint failed to allege adequately the "predicate acts" required under RICO and that the complaint failed to plead the requisite connection between any "predicate act" and appellants' injuries. Thus, appellants have been on notice, at least since September, 1984, of the basis for the argument against the sufficiency of their complaint. They failed to request the district court for leave to amend. The district court did not dismiss the complaint until February, 1987— over three years from the filing of the complaint and over two years from the filing of the motion to dismiss. If appellants thought that they had a claim for a "predicate act" of obstruction of justice, they had more than ample time to amend their complaint. We refuse, at this late stage, to add the legal arguments that appellants neglected to raise during the years that the complaint was pending before the district court.[2]

We find that appellants had no standing under RICO because of the absence of the requisite connection between the injuries alleged and the "predicate acts" pleaded in the complaint.

## IV. CLAIMS OF BONELLI AND THE CONJUGAL PARTNERSHIP IN THE THIRD THROUGH NINTH CAUSES OF ACTION

The district court dismissed the third (wrongful discharge and breach of employment agreement), fourth (libel and slander), eighth (wrongful arrest), and ninth ("campaign to discredit Pujol") causes of action; it found that those claims made "no mention of either Bonelli or the conjugal partnership except in the prayer for 'plaintiffs' collectively." It also dismissed the fifth (invasion of privacy), sixth (conversion, wrongful attachment and abuse of legal process), and seventh (infliction of emotional distress) causes of action; it found that those claims failed to state any facts upon which relief could be granted to Bonelli or the conjugal partnership.

The critical issue in considering the appeal by Bonelli and the conjugal partnership is the extent to which such claims may be considered to be independent of Pujol's claims. We must examine the language of the complaint for the adequacy of allegations of harms to those parties. We must also consider the extent to which the decision in the arbitration proceeding may stand as *res judicata* barring relitigation in the district court.

■ Appellants have argued that the arbitrators' decision cannot stand as *res judicata* as to any issue because the decision did not contain supporting factual findings. We reject this contention. The decision firmly stated that it represented a "full and final settlement" of the matter as a whole and of Pujol's counterclaims in particular. The failure of an arbitrator to make detailed supporting findings does not render such a final settlement ambiguous as to the resolution of the matters in controversy. *See Norris v. Grosvenor Marketing, Ltd.,* 803 F.2d 1281 (2d Cir.1986).

### A. The Third, Fourth, Eighth and Ninth Causes of Action

■ We agree with the district court that the third, fourth, eighth and ninth causes of action fail to state claims on behalf of Bonelli and the conjugal partnership. The fourth, eighth and ninth causes of action refer exclusively to injuries sustained by Pujol. They do not discuss any

---

1. Appellants had first suggested this argument in a short footnote in their appellate reply brief.

2. We note that this case has nothing in common with cases construing Fed.R.Civ.P. 15(b), allowing the amendment of pleadings to include issues tried by implied mutual consent through evidence presented at trial. *See, e.g., Dunn v. Trans World Airlines, Inc.,* 589 F.2d 408, 412 (9th Cir.1978).

injuries, direct or otherwise, sustained by Bonelli or the conjugal partnership. Bonelli and the conjugal partnership make an appearance only in the prayer for relief—and then only by implication as included in the "plaintiffs" who request damages. Even under liberalized rules of pleading, a simple request for relief without stating any grounds therefor is inadequate.

The interpretation of these claims as stating only claims for Pujol is further confirmed by comparison with Pujol's arbitration counterclaims. The language in the counterclaims is identical, with one exception, to that contained in these causes of action in the complaint. The only difference between the two is the substitution of "Pujol" for "plaintiffs" in the counterclaims' prayer for relief.

■ The third cause of action, the claim for wrongful discharge and breach of employment contract, presents a somewhat more complicated problem. With regard to Bonelli, appellants argue that the claim alleges direct injury to her when it states that Pujol's dismissal deprived him of "free vacations for himself and his wife." An examination of the corresponding arbitration counterclaim, however, dispels any doubts as to whether this phrase in the complaint can be construed as stating an independent claim for Bonelli. The counterclaim contains the identical language concerning vacations for Pujol and his wife and asserts damages to Pujol for the loss of those benefits. We think, therefore, that the language in the complaint must also be construed as asserting a loss of various forms of compensation to Pujol, including vacation benefits for himself and his wife. The arbitration's "full and final settlement" of the counterclaim stands as *res judicata* barring relitigation of the identical claim in the complaint.

■ With regard to the conjugal partnership, appellants claim that the third cause of action adequately states a claim for loss of compensation under the employment contract. Under Puerto Rico law, property "obtained by the industry, salaries, or work of the spouses or of either of them" belongs to the conjugal partnership. P.R.

Laws Ann. tit. 31, § 3641(2) (1968). Therefore, appellants contend, the losses alleged in this claim are those of the conjugal partnership.

The arbitration proceedings also bar this contention. The third cause of action, except for the substitution of "Pujol" for "plaintiffs," was restated in identical language in the corresponding arbitration counterclaim. Under Puerto Rico law,

> either of the spouses may legally represent the conjugal community. Any unilateral administration act of one of the spouses shall bind the community property and shall be presumed valid to all legal effects.

P.R. Laws Ann. tit. 31, § 286 (Supp.1986). *See also Franco v. Mayaguez Building, Inc.,* 108 P.R.Dec. 192 (1978). Under this statute, Pujol had standing to press the claims of the conjugal partnership in any legal proceeding. To the extent that the third cause of action states a claim on behalf of the conjugal partnership, therefore, the resolution of the identical claim in arbitration is *res judicata* as to that matter.

Appellants argue that the conjugal partnership was not a party to the arbitration agreement and cannot be bound by its results. The provision of Puerto Rico law just cited, however, gives either spouse the right to sue on behalf of the conjugal partnership. It is well established that all doubts as to the arbitrability of a dispute are to be resolved in favor of arbitrability. *See, e.g., Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.,* 774 F.2d 524, 528 (1st Cir.1985) (citations omitted). It would hardly be in conformity with this rule to hold that an arbitration agreement referring to "any controversy" excludes a party's claims in his representative capacity on behalf of his conjugal partnership. In addition, to hold that a party could sue in court on behalf of his conjugal partnership no matter what the result of the arbitration would deprive the arbitration of any finality.

■ Moreover, Pujol and the conjugal partnership did not have the right to recov-

er twice for lost benefits under the employment contract. Recovery by one spouse on a claim concerning community property binds the conjugal partnership and the recovery automatically becomes community property. *See Paredes Figueroa v. International Air Services of Puerto Rico, Inc.*, 662 F.Supp. 1202 (RLA) (D.P.R.1987); *Franco v. Mayaguez Building, Inc.*, 108 P.R. Dec. 192. Therefore, the results of the arbitration proceedings stand as a *res judicata* bar to the present action on this claim.

### B. The Fifth, Sixth and Seventh Causes of Action

With regard to the conjugal partnership, we affirm the district court's dismissal of the fifth, sixth and seventh causes of action. These causes of action were restated in identical terms in the arbitration counterclaims, with all references to tortious injury to Bonelli and her personal property omitted. We find that the arbitration counterclaims either did or could have stated claims on behalf of injury to the conjugal partnership. As we have discussed above, Pujol had full power to press the claims on behalf of the conjugal partnership in the arbitration proceeding. The arbitration decision, therefore, stands as a *res judicata* bar to these claims.

Finally, we turn to Bonelli's own claims which are alleged in the fifth, sixth and seventh causes of action. In dismissing these claims, the district court stated: "Furthermore, causes of action five, six and seven only make reference to plaintiffs collectively which would seem to include both Ana Bonelli and the conjugal partnership. However, these claims fail to state any facts upon which relief can be granted on their behalf." It is not clear whether the district court dismissed the claims because it felt that, as part of the conjugal partnership, Bonelli was precluded by the arbitration award or for failure to state a claim upon which relief could be granted. The court did not advert to Federal Rule of Civil Procedure 12(b)(6).

■ Under modern Puerto Rico law, a wife has the right to sue for injury to herself. *See Robles Ostolaza v. University of Puerto Rico*, 96 P.R.R. 570 (1968). We, therefore, examine causes of action five, six, and seven to determine whether they can be fairly read to state a claim for Bonelli. Five alleges: that after taking control of Pujol's office without his knowledge or consent, defendants "thereupon proceeded to rummage through private and confidential personal files and papers of Plaintiff*s*"; that "[t]he personal articles described in the proceeding allegation were clearly designated as Plaintiff*s*' personal property"; and the defendants photocopied, viewed and removed "Plaintiff*s*' personal documents" and personal property. (Emphasis added.) Article II, § 8 of the Constitution of Puerto Rico provides: "Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." If Bonelli can prove that personal papers, documents and property belonging to her, as distinct from her husband or the conjugal partnership, were subjected to the treatment alleged, then she has stated a cause of action.

The sixth cause of action realleges the allegations in the fifth and, in addition, alleges facts that could constitute conversion and/or abuse of process relative to the "plaintiffs'" personal property. What we said above about Bonelli's proof and stating a cause of action is equally applicable here.

■ The seventh cause of action states in pertinent part:

10.2 Plaintiffs have been exposed to serious mental suffering, anxiety and anguish by reason of all the abusive and confiscatory acts on the part of all Defendants, and their internal family relationships have been severely strained by reports from their children that their classmates have imputed wrongdoing to Plaintiff Pujol.

10.3 The facts set forth in the preceding paragraph were entirely foreseeable as a result of the recklessly negligent conduct of all Defendants, and Defendants had been warned that such facts would occur.

These allegations state a cause of action for Bonelli.

■ Nor is the arbitration award a bar to Bonelli's claims. Bonelli was not a party to the arbitration agreement. Bonelli's right to sue for direct injury to her property and herself is not precluded by the language contained in Pujol's arbitration counterclaims.

We, therefore, reverse the dismissal of the fifth, sixth and seventh causes of action insofar as they pertain to independent injuries to Bonelli and her property.[3]

## V. MOTION FOR PARTIAL SUMMARY JUDGMENT

Appellants argue that the arbitration award should be given collateral estoppel effect in relation to all issues decided during that proceeding. This matter, however, is not properly before us for review at this time. The district court dismissed appellants' complaint entirely. The motion for summary judgment was thereby rendered moot and was presumably denied on that basis. Our partial reversal of the dismissal means that the district court will rule on the merits of any motions based on the revived causes of action.

*Affirmed in part, reversed in part, remanded.*

Appellees are awarded 80% of the costs on appeal and appellants 20%.

---

**3.** We reject appellees' contention concerning the *res judicata* effect of the proceedings in Puerto Rico Superior Court with regard to Bonelli's property; the action was dismissed as moot and accordingly has no *res judicata* effect.