Honorable Francisco Amaury **PADILLA RODRIGUEZ, et al., Plaintiff,**

v.

Honorable Edgardo **LLORENS QUIÑONES, et al., Defendant.**

**Civ. No. 89–1536 (JP).**

United States District Court, D. Puerto Rico.

Feb. 22, 1993.

---

Gerardo Mariani Padilla, Woods & Woods, Hato Rey, PR, for plaintiff.

Dennis A. Simonpietri Monefeld, Hato Rey, PR, Juan R. Marchand Quintero, Rivera Cestero & Marchand Quintero, San Juan, PR, for defendant.

## OPINION & ORDER

PIERAS, District Judge.

This case arises out of a complaint filed by plaintiffs Francisco Amaury Padilla Rodriguez and Miguel A. Laporte González alleging violations by a host of defendants of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (hereinafter "RICO"). The Court now has before it three motions to dismiss. The first was filed by defendants Herrero, Cales, Feliciano, Pelegrin, Rossner and Champagne ("the government defendants") on February 23, 1990 (docket No. 16). The second was filed by defendants Roca, de Jesús, Rivera and the Caribbean International News Corporation ("the newspaper defendants") on February 28, 1990 (docket No. 20). The third was filed by defendant Lloréns on April 18, 1990, joining in the motion filed by the government defendants (docket No. 30). For the reasons set forth below, each of the motions is hereby GRANTED.

## I. Background

Plaintiff Padilla, a former Assistant District Attorney assigned to the Superior Court of Puerto Rico located in Guayama, became a Superior Court Judge in April 1984. Verified Complaint ¶¶ 9 and 10. On July 1, 1984, he was transferred to the Guayama Superior Court and designated Administrator of the Guayama Judicial Region. *Id.* ¶ 10. In 1985, defendant Edgardo Lloréns–Quiñones was appointed as District Attorney for the Guayama Region. *Id.* During the years 1986 and 1987, defendant Lloréns, who wished to become a Superior Court Judge, allegedly devised a plan to conduct an ongoing legal battle with plaintiff Padilla to force him to withdraw from the bench. *Id.* ¶ 11. Lloréns devised this plan with his subordinates, including defendants Augusto Rossner–Ortiz and José M. Herrero Marrero, who were Assistant District Attorneys for the Guayama region, and with defendant Luis Feliciano–Carreras, who was the Chief District Attorney for the Commonwealth of Puerto Rico. *Id.* When plaintiff Laporte, who was also an Assistant District Attorney in the Guayama region, refused to participate in their scheme, the defendants allegedly decided to ruin his career as well. *Id.*

The acts which the defendants allegedly committed in carrying out their plan are summarized in plaintiffs' Verified Complaint. They include:

(i) an attempt by defendant Lloréns, defendant Pelegrin (a sergeant in the Guayama Police Department), and defendant Lipset Champagne (an Assistant District Attorney), to manipulate the investigation of an automobile accident involving plaintiff Padilla so that it would appear that the accident was the result of gross negligence on the part of Padilla (*id.* ¶ 12, pp. 10–13);

(ii) several attempts by defendant Llo-réns to improperly prevail upon plaintiff Padilla make certain determinations in criminal cases and one attempt by Llo-réns to leak to the press District Attor-neys Office files with the intent to harm Padilla's reputation (*id.* pp. 13–17);

(iii) several failed attempts by defendant Lloréns to have members of the Guayama Police Department conduct surveillance of plaintiff Padilla (*id.* p. 18);

(iv) an attempt by defendant Lloréns to force two police officers to provide false sworn statements incriminating plaintiff Laporte in the commission of crimes (*id.* p. 19); and

· (v) various allegedly slanderous comments directed against plaintiff Padilla, including statements that he was "a corrupt judge," that he "spent his time in places of ill repute," and that he "falsified the signature of an attorney" (*id.* ¶ 13).

The defendants allegedly spoke with several journalists with the intent of generating newspaper articles which would tarnish the plaintiffs' reputations. *Id.* ¶ 16. The journalists included defendants Tomás de Jesús Mangual, Miguel Rivera Puig, and Gaspar Roca of the newspaper El Vocero, which is owned by defendant Caribbean Newspaper Corporation. *Id.* The conversations resulted in the publication of a series of allegedly malicious and libelous articles and editorials throughout December 1988 and February 1989. The items included the following assertions:

(i) that plaintiff Padilla gave an illegal suspended sentence to a mafia defendant, Osvaldo Rodriguez Cardona, who would allegedly divulge information harmful to the plaintiff if treated harshly; in addition, he arranged that defendant Rossner, who was allegedly fighting to see Rodriguez Cardona convicted, was transferred out of the district (*id.* ¶ 19, pp. 25–31);

(ii) that an investigation was being conducted by the Federal Bureau of Investigation into the irregularities associated with the handling of the Rodriguez Cardona case, including an allegation that plaintiff Laporte had received bribes from Rodriguez Cardona (*id.* p. 37);

(iii) that plaintiff Padilla's ex-wife had requested on several occasions that he be incarcerated for failure to make child support payments (*id.* pp. 34–35); and

(iv) that plaintiff Padilla had conducted the case against alleged rapist Augusto Santiago de Armas in an improper fashion (*id.* pp. 39–40).

The plaintiffs charge that as a result of the defendants' actions they were deprived of their good reputations. Plaintiff Padilla was deprived of his position as Judge Administrator for the Guayama Judicial Center, deprived of the use of an official vehicle, and deprived of the privilege of hearing criminal cases. Plaintiff Laporte was compelled to leave Guayama to work in Aibonito. Both believe that they "face grim futures as they come up for reappointment." *Id.* ¶ 27. Plaintiffs charge the defendants with various violations of RICO, as well as with pendent claims for malicious defamation, libel and slander, fraud and negligence.

## II. Discussion

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Federal Bank*, 948 F.2d 41 (1st Cir.1991). The court must accept as true the well-pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences therefrom in favor of the plaintiff. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2576, 49 L.Ed.2d 493 (1976); *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 51 (1st Cir.1990); *Dartmouth Review v. Dart-*

*mouth College*, 889 F.2d 13, 16 (1st Cir. 1989).

■ Section 1964(c) of RICO provides a private civil action to recover treble damages for any person "injured in his business or property" by reason of a violation of Section 1962, which lists the acts which the statute prohibits. The Supreme Court, in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), interpreted Section 1964(c) as providing a "standing" requirement for any plaintiff seeking to bring a private RICO action. The Court stated:

> If the [RICO] defendant engages in a pattern of racketeering activity in a manner forbidden by [§§ 1962(a) through (c) ], and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).... [T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

*Id.* at 496–97, 105 S.Ct. at 3285 (quoting *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir. 1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The First Circuit, in applying the directives of *Sedima*, has explained that it sets forth two requirements for establishing standing under Section 1964(c). First, the plaintiff must show the predicate acts which constitute a violation of Section 1962 on the part of the defendant. Second, the plaintiff must show that his injury was caused by the identified violation. *Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201 (1st Cir.1987); *see also Nodine v. Textron, Inc.*, 819 F.2d 347 (1st Cir.1987). The plaintiff must show a violation of Section 1962 because RICO provides no cause of action to individuals injured by acts other than criminal RICO violations. *Accord id.* at 349 (citing *Haroco, supra*, at 398 ("[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct"); *Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 516 (2d Cir.1984), *vacated on other grounds*, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985) ("plaintiff ... must prove that defendants' violation caused the injury")).

The requirements set forth in *Sedima* most often present to a RICO plaintiff a challenge in showing causation. Those plaintiffs that fail to meet its requirements to establish standing often have no difficulty showing that the defendants committed the required predicate acts but are unable to show how these acts were the cause of the damages suffered. For example, in *Pujol*, the plaintiff alleged in his complaint that he was fired from his job and slandered because of actions he took to report and stop a pattern of illegal banking transactions and fraud carried out by the defendants through use of the mail and wires. The Court, in finding that the plaintiff failed to sufficiently allege standing, stated that although the plaintiff was injured and the defendants had committed several predicate acts, the injuries suffered by the plaintiff were not the result of these predicate acts since the plaintiff was not a defrauded client or investor or otherwise a target of any of the acts alleged. Or, stated otherwise, the plaintiff's injuries were not caused by the predicate acts alleged; therefore, the plaintiff did not have standing to sue under RICO. *Pujol*, 829 F.2d at 1205; *see also Nodine, supra* (plaintiff fired for reporting illegal scheme to superiors did not have standing under Section 1964(c) because defendants' decision to fire plaintiff was an action independent of the illegal scheme alleged in the complaint); *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 47 (1st Cir.1991) (and cases cited therein) (similar facts).[1]

Although causation is the most common hurdle which RICO plaintiffs must clear in attempting to show standing, other prob-

---

1. The causation standard set forth in *Sedima* is to be broadly applied. An individual is deemed injured "by reason of" a Section 1962 violation where his injury either directly or indirectly "flows from" the defendants' predicate acts. *Ac-*

*cord Sedima*, 473 U.S. at 497 & n. 15, 105 S.Ct. at 3285 & n. 15; *see also Bass v. Campagnone*, 838 F.2d 10, 12 (1st Cir.1988) (and cases cited therein).

lems also arise. Although the issue has not yet been addressed by the First Circuit, several courts have held that only certain *types* of damages are recoverable by RICO plaintiffs. As the Eleventh Circuit has explained:

> The words "business or property" [in Section 1964(c)] are, in part, words of limitation; if Congress had intended for the victims of predicate acts to recover for all types of injuries suffered, it would have drafted the statute to read: "A person *injured* by reason of a violation of Section 1962 of this chapter may sue therefor...."

*Grogan v. Platt*, 835 F.2d 844, 846, *reh'g denied en banc*, 851 F.2d 1423 (11th Cir.), *cert. denied*, 488 U.S. 981, 109 S.Ct. 531, 102 L.Ed.2d 562 (1988) (citations omitted). In *Grogan*, the Eleventh Circuit addressed the issue of whether pecuniary and nonpecuniary damages associated with personal injuries are recoverable under RICO. The case was brought by several federal agents and the estates of two other agents to recover for injuries suffered as a result of a gun fight involving the defendants, who were suspects in a bank robbery. The court considered whether the economic consequences which inevitably flow from personal injuries fall within the category of damages to "business and property" under RICO. In holding that the damages suffered were *not* damages to business or property, the court stated:

> We agree that "[h]ad Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, *all of which will cause some financial loss*, it could have enacted a statute referring to injury generally, without any restrictive language."

*Id.* at 847 (quoting *Morrison v. Syntex Laboratories*, 101 F.R.D. 743, 744 (D.D.C. 1984) (emphasis added)); *see also Bennett v. Centerpoint Bank*, 761 F.Supp. 908, 916 (D.N.H.), *aff'd without op.*, 953 F.2d 634 (1st Cir.1991) (citing *Grogan*) (without reaching the question of standing, fear for

one's personal safety after receiving a threatening telephone call is not an injury to business or property as required by Section 1964(c)); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169–70 (3rd Cir.1987) (damages for emotional distress are not recoverable under RICO).

Each of the defendants has moved for the dismissal of plaintiffs' complaint on a number of grounds; however, the Court will address only the threshold issue of standing. The thrust of the defendants' argument on this issue is that, based on the cases summarized above, the primary damages claimed by the plaintiffs—injury to reputation—are not recoverable under RICO. The cases summarized above do not unarguably direct a finding in the defendants' favor. The defendants have only cited to one case which squarely holds that injuries flowing from damaged reputations are not recoverable under RICO. *Accord Callan v. State Chemical Mfg. Co.*, 584 F.Supp. 619 (E.D.Pa.1984). The Court therefore is mindful of the persuasive authority provided by the case law but approaches this issue as an open one.

■ In endeavoring to determine whether an injury to reputation is an injury to business or property under Section 1964(c), or, alternatively, is more akin to personal injury, it is essential to keep in mind RICO's specific purpose to thwart the criminal invasion and acquisition of legitimate business enterprises and property. The plaintiffs in this case are alleging nothing remotely resembling such an invasion or acquisition. The damages which they claim are no more than injuries which flow from the negative articles published by the newspaper defendants. Primary among these alleged damages is the plaintiffs' loss of reputation. In addition, plaintiff Padilla lost his status as Judge Administrator and the use of an official car while plaintiff Laporte was forced to work in Aibonito.[2] The allegations in plaintiffs' complaint clearly state that each of these damages

---

2. Both plaintiffs allege that they incurred "significant expenses" and "face grim futures as they come up for reappointment." These allegations are too vague and speculative to be the basis for recovery because of loss to business or property.

was a result of the campaign of articles and remarks which tarnished their images.

Furthermore, while RICO does not appear to the appropriate vehicle to redress the harms which the plaintiffs suffered, the law of Puerto Rico provides ample opportunity for the plaintiffs to recover under the theories of slander, defamation, libel, fault, and negligence. The plaintiffs have in fact sued the defendants under each of these theories in this case and the monetary recovery they request under these causes of action is more than four-fifths of the recovery they seek. As the Third Circuit has stated under similar circumstances, "[w]e discern no injustice in limiting a RICO plaintiff's recovery for his personal injuries to ordinary non-RICO legal measures." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918 (3rd Cir.1991). The Court therefore concludes that damages relating to injury to reputation are personal injuries not recoverable under RICO.

In addition, plaintiffs' complaint lacks sufficient allegations from which one might conclude or infer that their damages flowed from the alleged predicate acts listed in their RICO claim. Rather, the complaint clearly states that their damages flowed from the acts of slander, defamation, and negligence alleged in their pendent claims. Since the plaintiffs' damages do not flow from the defendants' alleged predicate acts, plaintiffs cannot establish the element of causation necessary for standing to sue under RICO.

Based on the foregoing, defendants' motions to dismiss must be GRANTED and plaintiffs' complaint must be DISMISSED.

IT IS SO ORDERED.