UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 97-1355

AUGUSTUS JOHN CAMELIO,
Plaintiff - Appellant,

v.

AMERICAN FEDERATION, ETC., ET AL.,
Defendants - Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Godbold,* Senior Circuit Judge, 

and Barbadoro,** District Judge. 



Lee H. Kozol, with whom Debra Dyleski-Najjar, Penny Kozol 
and Friedman & Atherton were on brief for appellant. 
Andrew D. Roth, with whom Devki K. Virk, Bredhoff & Kaiser, 
P.L.L.C., William J. Hardy, Prescott M. Lassman and Kleinfeld, 
Kaplan & Becker were on brief for appellees. 



March 5, 1998


 

* Of the Eleventh Circuit, sitting by designation.

** Of the District of New Hampshire, sitting by designation.

BARBADORO, District Judge. Augustus Camelio, a former BARBADORO, District Judge. 

employee and member of a labor union, brought this suit in state

court against the union and fourteen members of its leadership.

Camelio alleges that defendants had him fired from his job and

forced him out of the union in violation of the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A.

1961-1968 (West 1994 & Supp. 1997), and several provisions of

Massachusetts state law. After defendants removed the case to

federal court, the district court below dismissed Camelio's RICO

claim and several of his state law causes of action for failure

to state a claim. The court then remanded the remaining claims

to state court. Camelio appeals the dismissal of his federal and

state claims. We affirm in part, concluding that the court

properly dismissed his RICO claim. We disagree, however, with

the district court's decision to dismiss the state law causes of

action. Rather than dismissing these claims, the court should

have remanded them to state court along with the rest of the

state law claims. 

I. BACKGROUND1 I. BACKGROUND1 

Augustus Camelio served for nearly thirty years as

General Counsel to Council 93 of the American Federation of

State, County and Municipal Employees ("AFSCME"). In 1995, the

United States Department of Labor and the Internal Revenue
 

1 As this appeal arises from a dismissal for failure to state a
claim, we treat as true the complaint's well-pleaded allegations
and construe those allegations in Camelio's favor. See, e.g., 
Miranda v. Ponce Fed. Bank, 948 F.2d 41, 43 (1st Cir. 1991); 
Nodine v. Textron, Inc., 819 F.2d 347 (1st Cir. 1987). 

-2-

Service initiated investigations into Council 93's financial

affairs that threatened to expose an ongoing scheme to

misappropriate union funds by several members of the union's

leadership. In response, Camelio alleges, defendants engaged in

a concerted effort to thwart the two federal investigations.

Camelio launched his own investigation into Council

93's financial affairs after learning of the federal inquiries.

He claims that the individual defendants, all members of the

union leadership, initially rebuffed his requests for information

and later had him fired when he persisted with his investigation.

Camelio continued to investigate even after he lost his job, this

time relying on his right as a union member to inspect the

union's books and records. He also announced his candidacy for

vice president of AFSCME's northern New England region, a

position that would allow him to further his investigation. In

an attempt to thwart Camelio's candidacy and keep him from

uncovering any evidence of defendants' criminal scheme, however,

several of the individual defendants first threatened Camelio and

ultimately forced him out of the union when their threats were

not heeded. 

Camelio sued Council 93 and the individual defendants

in Massachusetts state court. He alleged claims based on

Massachusetts law for breach of contract, wrongful discharge,

tortious interference with contract, violations of the state

constitution, intentional and negligent infliction of emotional

distress, defamation, and false light invasion of privacy. He

-3-

also alleged that the individual defendants violated the federal

RICO statute. See 18 U.S.C.A. 1962(c), 1964(c).  

Relying on Camelio's RICO claims, defendants removed

the case to federal court in the District of Massachusetts. See 

28 U.S.C.A. 1441(a)&(b) (West 1994). Defendants then moved to

dismiss for failure to state a claim. The district court allowed

Camelio to amend his complaint to more specifically state his

allegations, but ultimately concluded that he had failed to

sufficiently allege a RICO claim against any of the defendants.

The court also dismissed three of Camelio's state law claims

against all defendants (breach of contract, negligent infliction

of emotional distress, and false light invasion of privacy) and

parts of two other claims as to some defendants (state

constitutional violations and intentional infliction of emotional

distress) before remanding the remaining claims to state court.

II. DISCUSSION II. DISCUSSION 

The district court dismissed Camelio's RICO claims

because it concluded Camelio's complaint failed to sufficiently

allege that his injuries were proximately caused by any of the

predicate acts of racketeering on which the RICO claims were

based. The court gave only a cursory explanation for its

dismissal of the state law claims over which it retained

jurisdiction. Camelio challenges both rulings. 

A. The RICO Claims A. The RICO Claims 

In addition to criminal penalties, RICO provides a

private right of action for treble damages and attorneys fees to

-4-

"[a]ny person injured in his business or property by reason of a

violation of section 1962." 18 U.S.C.A. 1964(c). Camelio

bases his RICO claims on 1962(c), which makes it unlawful for

any person to conduct the affairs of an enterprise affecting

interstate commerce by means of a "pattern of racketeering

activity." 18 U.S.C.A. 1962(c). The Act also provides a list

of actions and statutory violations that constitute "racketeering

activity" and states that a "pattern" of such activity requires

at least two acts of racketeering. 18 U.S.C.A. 1961(1)&(5).

When a plaintiff attempts to base a civil RICO claim on 

1962(c), that claim cannot succeed unless the injuries of which

the plaintiff complains were caused by one or more of the

specified acts of racketeering.2 Miranda v. Ponce Fed. Bank, 

948 F.2d 41, 46-7 (1991). Moreover, merely proving that the

alleged predicate acts were a "cause in fact" of plaintiff's

injuries will not be sufficient. Instead, 1964(c) requires

proof that at least one of the defendant's predicate acts was the

proximate cause of the plaintiff's injuries. Holmes v. 

Securities Investor Protection Corp., 503 U.S. 258, 268 (1992). 

Camelio alleges that defendants injured him by

depriving him of his property interests in his job and his union

membership. He asserts that defendants engaged in the following

pattern of RICO predicate acts: misappropriation of funds in

 

2 Although it is not at issue in this case, this court has held
that the same causation requirement applies to RICO conspiracy
claims under 1962(d). Miranda v. Ponce Fed. Bank, 948 F.2d 41, 
48 & n.9 (1st Cir. 1991).

-5-

violation of 29 U.S.C.A. 501(c) (West 1985); attempted

extortion in violation of the Hobbs Act, 18 U.S.C.A. 1961(1)

(West 1984 & Supp. 1997); and obstruction of justice in violation

of 18 U.S.C.A. 1510 and 1512 (West 1984 & Supp. 1997).3 In

his complaint, Camelio asserts a myriad of claims in various

combinations against fourteen individual defendants as well as

against Council 93. For the sake of clarity of our analysis, we

treat all of the defendants together, rather than individually.4

Accordingly, to satisfy RICO's causation requirement at the

motion to dismiss stage, Camelio's complaint must allege that the

injuries of which he complains were proximately caused by one or

more of these predicate acts. We examine the sufficiency of the

complaint's causation allegations by addressing each category of

predicate acts in turn.

1. Misappropriation of Funds Claims 

Camelio claims that nine of the fourteen individual

defendants misappropriated union funds in violation of 18

U.S.C.A. 501(c) by taking such funds for personal use and

causing union money to be paid for legal services that were never

rendered. 

A violation of 501(c) qualifies as a predicate

racketeering act under RICO. See 29 U.S.C.A. 1961(1). 
 

3 Camelio alleges these violations in various combinations
against each of the fourteen individual defendants. In no event
does he allege less than two violations against any one
defendant.

4 For the sake of clarity, we treat Camelio's allegations
against the defendants collectively.

-6-

However, even if we assume that Camelio has sufficiently alleged

that defendants violated 501(c), these violations cannot

satisfy RICO's causation requirement because the connection

between the violations and Camelio's injuries is insufficiently

close to say that one proximately caused the other. See Miranda, 

948 F.2d at 47 (bribery not cause of plaintiff's job loss); Pujol 

v. Shearson/American Express, Inc., 829 F.2d 1201, 1205 (mail and 

wire fraud not proximate cause of plaintiff's job loss); Nodine, 

819 F.2d at 349 (mail and wire fraud not cause of plaintiff's job

loss). In other words, even if defendants did violate 501(c)

by stealing union funds, their misappropriations were too far

removed from Camelio's loss of his job and his union membership

to serve as the proximate cause of his injuries.

2. Extortion Claims 

Camelio continued his investigation after he lost his

job, relying on his right as a union member to inspect the

union's financial records. See 29 U.S.C.A. 431(c) (West 

1985). He also announced his candidacy for vice president of the

union's northern New England region. Camelio claims that several

of the defendants attempted to stifle his investigation and force

him to abandon his candidacy by threatening to deprive him of his

membership in the union if he did not desist. He asserts that

such conduct violates the Hobbs Act, 18 U.S.C.A. 1951(a), a

crime which qualifies as a predicate act under RICO. See 18 

U.S.C.A. 1961(1). 

-7-

Like Camelio's misappropriation claims, his Hobbs Act

claims cannot satisfy RICO's causation requirement because the

Hobbs Act violations he alleges did not cause the loss of either

his job or his union membership. The Hobbs Act punishes any

person who "obstructs, delays or affects commerce . . . by

robbery or extortion or attempts or conspires to do so." 18

U.S.C.A. 1951(a). The Act defines "extortion" as "the

obtaining of property from another, with his consent induced by 

wrongful use of actual or threatened force, violence, or fear, or

under color of official right." 18 U.S.C.A. 1951(b)(2)

(emphasis added). If Camelio's complaint successfully pleads any

Hobbs Act violations, those violations resulted from defendants'

attempts to induce Camelio to abandon certain property rights

attendant to his union membership (e.g., his right to inspect the

union's financial records and his right to seek union office).

As Camelio concedes that these attempts did not succeed, they

could not have caused his injuries. Instead, the complaint

alleges that Camelio's injuries were actually caused by

defendants' unilateral acts which, although reprehensible, do not

violate the Hobbs Act.5
 

5 Camelio alleges that defendants, acting in various
combination: denied him the right to attend a union hearing;
changed the means of collecting union dues so as to put his dues
in arrears and thereby deprive him of his status as a union
member; rebuffed his subsequent efforts to pay his dues; declared
him ineligible to seek office within the union and removed his
name from the ballot; and denied his repeated requests for a
hearing on the issue of his membership. Such unilateral acts,
though possibly unlawful on some other grounds, do not fall under
the express terms of the Hobbs Act, which prohibits only "the
obtaining of property from another, with his consent, induced by 

-8-

3. Obstruction of Justice Claims 

Camelio's final argument is that defendants are liable

under RICO because they engaged in a campaign of obstructive

conduct in violation of two federal criminal statutes, 18

U.S.C.A. 1510 and 1512. Violations of these statutes

constitute predicate acts of "racketeering activity" under RICO.

See 18 U.S.C.A. 1961(1). Further, Camelio has sufficiently 

alleged that defendants' obstructive conduct caused his injuries

to satisfy RICO's proximate cause requirement. Camelio's final

attempt to salvage his RICO claims fails, however, because the

conduct of which he complains does not violate either obstruction

statute.

The two statutes on which Camelio relies are similar in

focus and effect. Section 1510(a) makes it a crime for any

person to "willfully endeavor[] by means of bribery to obstruct,

delay, or prevent the communication of information relating to a

violation of any criminal statute . . . to a criminal

investigator." 18 U.S.C.A. 1510(a). Similarly, 1512(a)(2)

punishes any person who "intentionally harasses another person

and thereby hinders, delays, prevents, or dissuades any person

 

wrongful use of actual or threatened force, violence, or fear."
18 U.S.C. 1951(b)(2) (emphasis added); see also Evans v. United 
States, 504 U.S. 255, 265 (1992) (reasoning that where the 
defendant is a private actor -- and not a public official
extorting under color of official right -- "the victim's consent 
must be induced by wrongful use of actual or threatened force,
violence or fear.") (emphasis added) (internal quotations
omitted); United States v. Bucci, 839 F.2d 825, 827 (1st Cir.), 
cert. denied, 488 U.S. 844 (1988); United States v. Hathaway, 534 
F.2d 386, 393 (1st Cir.), cert. denied, 429 U.S. 819 (1976). 

-9-

from . . . reporting to a law enforcement officer . . . the

commission . . . of a Federal offense." 18 U.S.C.A. 

1512(c)(2). Both statutes focus on a specific step in the

criminal investigatory process, namely the "communication" or

"reporting" of information to criminal investigators. See, e.g., 

United States v. Siegel, 717 F.2d 9, 20 (2d Cir. 1983) (in order 

to convict under 1510(a), prosecution must prove that defendant

had a reasonably founded belief that information had or was about

to be given to a federal investigator); United States v. San 

Martin, 515 F.2d 317, 320-21 (5th Cir. 1975) (prosecution must 

prove that "[defendant] knew or reasonably believed that

[informant] had information which she had given or would give" to

federal investigators). 

The conduct on which Camelio bases his claims falls

outside the scope of both statutes because he alleges that

defendants engaged in their obstructive conduct in an effort to

prevent him from uncovering information of wrongdoing rather than

to prevent him from reporting information he had already

uncovered. Conduct that is aimed only at preventing a private

citizen from uncovering evidence of a crime, while undeniably

wrong, is not within the purview of either obstruction of justice

statute. Accordingly, Camelio cannot save his RICO claims by

relying on either statute.

This is the fourth time in recent years that we have

been called upon to evaluate the sufficiency of a RICO claim

arising from an employment dispute. In all four cases, the claim

-10-

has failed to survive a motion to dismiss. See, e.g., Miranda, 

948 F.2d at 47; Pujol, 829 F.2d at 1205; Nodine, 819 F.2d at 349. 

Although we are not prepared today to address the issue in a

categorical fashion, we emphasize the court's statement in

Miranda: "While it may be theoretically possible to allege a 

wrongful discharge which results directly from the commission of

a RICO predicate act . . . any such safe harbor would be severely

circumscribed." 948 F.2d at 41. Whatever the future may hold

for this category of claims, Camelio's RICO claims are well

outside any safe harbor that may exist.

B. The State Law Claims B. The State Law Claims 

After properly dismissing Camelio's RICO claims, the

district court proceeded to dismiss three of his state law claims

against all of the defendants (breach of contract, negligent

infliction of emotional distress, and false light invasion of

privacy) and parts of two other claims as to several individual

defendants (state constitutional violations and intentional

infliction of emotional distress). The court then declined to

exercise supplemental jurisdiction over the remaining claims and

remanded them to state court. Camelio challenges the court's

dismissal of the state law claims. Rather than addressing the

merits of these claims, we conclude that the court erred in

retaining supplemental jurisdiction over the state law claims

after it dismissed the federal claims on which jurisdiction was

based.

-11-

A federal court exercising original jurisdiction over

federal claims also has "supplemental jurisdiction over all other

claims that are so related to the claims in the action within

such original jurisdiction that they form part of the same case

or controversy under Article III of the United States

Constitution." 28 U.S.C.A. 1367(a) (West 1993). If, however,

the court dismisses the foundational federal claims, it must

reassess its jurisdiction, this time engaging in a pragmatic and

case-specific evaluation of a variety of considerations that may

bear on the issue. Roche v. John Hancock Mut. Life Ins. Co., 81 

F.3d 249, 256-57 (1st Cir. 1996). Among the factors that will

often prove relevant to this calculation are the interests of

fairness, judicial economy, convenience, and comity. Id. Comity 

is a particularly important concern in these cases. As the

Supreme Court observed in United Mine Workers v. Gibbs, 383 U.S. 

715, 726 (1966), 

Needless decisions of state law should be
avoided both as a matter of comity and to
promote justice between the parties, by
procuring for them a surer-footed reading of
applicable law. Certainly, if the federal
claims are dismissed before trial, even
though not unsubstantial in a jurisdictional
sense, the state claims should be dismissed
as well.

Accordingly, the balance of competing factors ordinarily will

weigh strongly in favor of declining jurisdiction over state law

claims where the foundational federal claims have been dismissed

at an early stage in the litigation. See Rodr guez v. Doral 

Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  

-12-

A variety of factors counsel against retention of

jurisdiction over the state law claims in this case. First, the

court dismissed the only federal claims well before trial under

circumstances in which the parties would not be unfairly

prejudiced by a remand of the state law claims. Second, it does

not appear that the district court's disposition of some but not

all of the state law claims will materially shorten the time it

will take to resolve the parties' dispute as the remanded claims

concern the same nucleus of operative fact as the dismissed

claims. Third, and perhaps most importantly in this case, the

claims that the court dismissed raise substantial questions of

state law that are best resolved in state court. For all of

these reasons, we hold that the district court erred in retaining

jurisdiction over the state law claims.

III. CONCLUSION III. CONCLUSION 

For the foregoing reasons, we conclude that the

district court properly dismissed Camelio's RICO claims. Having

dismissed the federal claims, however, the court should have

refrained from exercising supplemental jurisdiction over

Camelio's state law claims and remanded them to state court.

The district court's dismissal of Camelio's RICO claims

is affirmed. As to the supplemental state law claims, the affirmed 

court's judgment is vacated with instructions to remand the vacated 

remaining claims to state court.

-13-