# United States Court of Appeals
## For the First Circuit

No. 10-1035

FLEETBOSTON FINANCIAL CORPORATION N/K/A BANK OF AMERICA
CORPORATION; ROBERTSON STEPHENS GROUP, INC.,

Counterdefendants, Appellees,

v.

ERIC E. ALT, ET AL.,

Counterplaintiffs, Appellants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Howard, Circuit Judge, and
DiClerico,[*] District Judge.

---

S. Elaine McChesney, with whom Alicia L. Downey, Laura K. Langley, and Bingham McCutchen LLP were on brief, for appellees.
Arthur R. Miller, with whom Jeffrey L. Liddle, James R. Hubbard, Michael E. Grenert, Liddle & Robinson, LLP., J. Owen Todd, Kevin T. Peters, Edward F. Foye, and Todd & Weld LLP were on brief, for appellants.

---

March 23, 2011

---

[*]    Of the District of New Hampshire, sitting by designation.

**LYNCH**, **Chief Judge**.  The district court confirmed an arbitration award and later entered summary judgment against the assertion of certain compensation claims on the theory that they had been disposed of in the arbitration proceeding.  Although the arbitral plaintiffs achieved a large measure of success in the arbitration, they appeal, arguing they should be free to further litigate their compensation claims in court.  We disagree and affirm.

The underlying dispute involved the employment claims of a group of forty-two former employees of Robertson Stephens, Inc. (RSI), and was the subject of the longest arbitration ever held before the New York Stock Exchange (NYSE).  Because the lead plaintiff in arbitration was Eric Alt, we refer to the appellants collectively as ALT, as do the parties.  ALT asserted claims in arbitration under various theories of liability for over $140 million in damages.  The arbitral panel heard many witnesses over two years and awarded over $14 million plus interest to twenty-seven of the forty-two ALT claimants.  Fifteen claimants received nothing.

A subset of ALT's employment claims were stayed in federal court during the arbitration.  After it had confirmed the arbitration award, the United States District Court for the District of Massachusetts was asked to enter summary judgment against ALT on these stayed claims.  The essential question was

whether the confirmed arbitral award precluded the forty-two ALT claimants from pursuing in court claims against Robertson Stephens Group, Inc. (RSGI), the owner of RSI, and FleetBoston Financial Corporation (Fleet),[1] itself the owner of RSGI, for deferred compensation under two agreements: (1) a cash equivalent plan (CEP) of deferred cash compensation awarded to five ALT claimants in 2000 and to thirty-six in 2001, and (2) a restricted stock unit plan (RSU) awarded to all forty-two claimants in the form of restricted stock units that could be converted to an equal number of RSGI shares.

These deferred compensation claims had clearly been before the arbitrators as to RSI, and ALT had named Fleet and RSGI themselves as parties to the arbitration proceedings, although both denied the panel had authority over them. ALT also advanced a variety of alternative theories as to why the arbitral panel could hear the deferred compensation claims regardless of whether Fleet and RSGI were parties to the arbitration proceedings, including that RSI was an alter-ego of RSGI and that RSI was itself liable for payment under the compensation plans.

The district court, construing the arbitral award, concluded that judgment should enter against ALT on its deferred compensation claims because it read the arbitral award as saying

---

[1] Fleet has since been acquired by Bank of America, and the claims against Fleet have not been pursued on appeal.

-3-

both (1) that the essence of those claims had been litigated during the arbitration proceedings, and (2) that RSGI and Fleet were parties in the arbitration proceedings. ALT now appeals.

We affirm. It is clear that the arbitral award did decide the essence of ALT's two deferred compensation claims against RSI, RSGI, and Fleet. ALT's belated attempt to seek remand to the arbitration panel for clarification of the award after the district court had confirmed that award was simply too little too late. This conclusion is consistent with traditional res judicata principles.

## I.

We truncate our description of events to the minimum needed to explain our reasoning.

ALT is a group of forty-two former employees of RSI, an investment banking firm and wholly owned subsidiary of RSGI, which was itself a wholly owned subsidiary of Fleet. Fleet began winding down RSI's operations in July 2002.

In December 2002, ALT filed NYSE arbitration claims against respondents Fleet, RSI, RSGI, and Fleet Securities, Inc. (FSI), another Fleet subsidiary, for breach of promises to pay bonuses in 2001 and 2002; violation of the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. §§ 2101-2109; severance pay; violation of state wage statutes; and fraud, negligent misrepresentation, and breach of fiduciary duty. ALT's

Statement of Claims aggregated the four respondents together and did not differentiate its claims between them.  FSI was dismissed as a party in January 2005.

As a NYSE member firm, RSI was required to arbitrate, and it filed an Answer to ALT's initial Statement of Claims in March 2003.  Subsequently, RSGI informed ALT that the employees had triggered the forfeiture provisions of the CEP and RSU deferred compensation plans they had been issued,[2] and that it did not intend to pay ALT under either plan.  This led ALT to file an Amended Statement of Claims, which included claims for breach of the CEP and RSU contracts against all respondents.  Like ALT's original claims, these claims did not differentiate among the respondents.

RSI responded to ALT's Amended Statement of Claims in July 2003.  While RSGI did not itself answer ALT's claims, RSI--whose counsel also represented RSGI--attempted on several occasions to dismiss RSGI and Fleet from arbitration on the grounds that

---

[2]    The RSU plan included a clause providing for the forfeiture of the RSU benefits if, during the six month period immediately following an employee's termination date, that employee "publicly disparages any member of the Company Group or Parent or any of their respective officers, directors or senior executive employees or otherwise makes any public statement that is adverse, inimical or otherwise materially detrimental to the interests of such Persons" or if the company "determines that the [employee's] actions are adverse to the best interest of the Company Group or Parent."  The CEP plan contained a similar provision.  The basis for RSGI's assertion that ALT's actions had triggered these forfeiture provisions was the publication of a Wall Street Journal article reporting on the NYSE arbitration proceedings.

neither were "members, allied members, or member organizations" of the NYSE and that neither had agreed to arbitrate. ALT opposed each of RSI's attempts to dismiss RSGI and Fleet. The arbitration panel never acted upon RSI's motions that RSGI be dismissed.

Concurrent with these early stages of the NYSE arbitration, Fleet, RSI, RSGI, and FSI filed an action against ALT in Suffolk Superior Court in March 2003, seeking, inter alia, a declaratory judgment and a stay of the arbitration as to RSGI and Fleet, again on the basis that neither RSGI nor Fleet were NYSE members and that neither had agreed to arbitrate.

ALT removed the action to the United States District Court for the District of Massachusetts on the basis of federal question jurisdiction. The district court declined the request of the litigation plaintiffs (the arbitration respondents) to stay the arbitration as to RSGI and Fleet, and instead stayed its own proceedings pending final resolution of the NYSE arbitration.[3]

Although the federal proceedings were stayed as of April 2003, in June 2004 ALT successfully sought leave to file counterclaims, including claims pertaining to the CEP and RSU plans. ALT sought leave on the basis that if the NYSE arbitration panel ultimately determined that it lacked jurisdiction over one of

_____

[3] Fleet and RSGI appealed the district court's order. Because there was not yet a final judgment, we determined we lacked jurisdiction over the appeal. See Fleetboston Fin. Corp. v. Alt, No. 03-1799 (1st Cir. Dec. 15, 2003).

-6-

the arbitration respondents, ALT's claims against them could be barred by the applicable statute of limitations. The entry of judgment against ALT on those counterclaims is the subject of this appeal.

After the district court declined RSI, RSGI, FSI, and Fleet's request for a stay of the arbitration but before taking evidence itself, the arbitration panel, at the request of both sides, sought clarification from the district court as to whether its order required RSGI and Fleet to arbitrate. The district court issued a responsive subsequent order stating that its initial order had not required RSGI or Fleet to arbitrate and that, in its view, whether the two were required to arbitrate was an issue properly left for the federal district court for the Southern District of New York. ALT never sought an order from the Southern District clarifying whether RSGI was required to arbitrate.

The hearings in the arbitration began in January 2005. RSGI and Fleet continued to maintain they could not be forced to arbitrate. ALT, by contrast, argued that the arbitrators had jurisdiction over RSGI and Fleet. ALT also argued that even if RSGI and Fleet were not parties, each of ALT's claims could be levied against RSI, which was unquestionably a party, and therefore could be resolved by the panel. First, ALT argued that "RSI, RSGI and Fleet were so interconnected that the actions of Fleet and RSGI can be imputed to RSI under a number of principles, including

agency, alter ego, and single employer doctrines." Second, ALT argued that because the CEP and RSU plans were compensation promised to ALT by RSI in exchange for services performed for RSI, RSI could be held in breach of contract for RSGI's alleged failure to honor the plans. Finally, ALT argued that RSI could be held liable for the CEP and RSU claims because RSI's arbitration agreement with its employees extended to all employment claims against RSI or "its current or former agents, affiliates or employees," thus rendering RSI liable for those claims. Significantly, ALT asserted no claim against RSGI or Fleet that they were liable independent of any liability of RSI.

The arbitration proceedings lasted more than two years and included testimony from fifty-nine witnesses and the submission of over four thousand exhibits. Each of the ALT claimants presented evidence regarding the CEP and RSU claims to the arbitration panel. Fleet representatives also testified extensively on the subject of those plans. ALT's cause of action in arbitration relating to the deferred compensation plans was the same cause of action ALT later asserted against RSGI in federal court, and these issues clearly fell within the scope of the issues to be arbitrated under the contract.

On September 12, 2007, the arbitration panel issued a decision that constituted a "full and final settlement of all claims between the parties," and that awarded twenty-seven of the

forty-two ALT claimants $14,690,000 in damages, plus interest. The award caption listed Fleet, RSI, and FSI; it did not name RSGI.[4] While the award identified the amount of damages awarded to each claimant, it did not specify which of ALT's claims were successful, and which were not.[5]

Following the issuance of the award, ALT made three requests to the panel that it clarify that it had rendered the award "against RSI alone," not RSGI, and had not decided either the CEP or RSU claims. A majority of the panel decided not to modify the award.

Returning to federal court, the parties jointly moved to lift the federal stay in December 2007. ALT amended its counterclaims related to the CEP and RSU claims so that they were targeted against RSGI and Fleet, alleging that those claims remained unresolved by the arbitration panel. RSGI and Fleet moved for summary judgment as to those claims, arguing that in light of the arbitral award, they were "barred as a matter of law by reason

_____

[4] The panel promptly issued a revised award later on September 12, 2007 "in which typographic errors have been corrected" and in which "the award has been corrected, as confirmed by the arbitrators, to reflect that [FSI] was dismissed as a named respondent." No clarification was offered regarding RSGI's status.

[5] One panel member, Arbitrator Daly, dissented in part on the basis that he would have awarded ALT claimants "monetary damages representing the value of the deferred compensation plans purportedly forfeited" and that in his view, the panel "had the authority to render such an award."

of claim preclusion, judicial estoppel, invited error, and payment."

Before addressing ALT's CEP and RSU claims and Fleet and RSGI's corresponding summary judgment motion, the district court confirmed the arbitral award. Neither ALT nor RSGI challenged the award, nor did either request remand to the arbitral panel for clarification as to whether the award extended to RSGI on the CEP and RSU claims.

After the award was confirmed, the district court entered judgment against ALT on its CEP and RSU claims against RSGI, reasoning both that RSGI was a party to the arbitration and that the panel had resolved the claims. ALT then filed a motion for reconsideration of the summary judgment order, arguing that the district court should reverse its decision regarding the CEP and RSU claims, or, in the alternative, remand to the arbitration panel so that the panel could clarify the arbitral award. This was the first time ALT raised the issue of remanding to the arbitration panel. The district court denied ALT's motion in all respects.

ALT's appeal from the order granting summary judgment timely followed.

II.

We review a district court's entry of summary judgment de novo. Zayas v. Bacardi Corp., 524 F.3d 65, 67 (1st Cir. 2008).

We are not asked to review the enforceability of the arbitral award, cf. Salem Hosp. v. Mass. Nurses Ass'n, 449 F.3d 234, 237 (1st Cir. 2006), nor are we faced with a challenge to the district court's confirmation of an award, cf. Kashner Davidson Sec. Corp. v. Mscisz, 531 F.3d 68, 74 (1st Cir. 2008). Rather, the question before us requires interpretation of the arbitral award to determine whether it resolved the CEP and RSU claims ALT now seeks to raise against RSGI in federal court.

In considering the scope of the arbitral award we look, inter alia, at the claims made before the arbitration panel and the arbitral award itself, comparing those claims to those later stated to the court; how the issues reached arbitration; and the testimony and evidence that was presented to the arbitrators. See Witkowski v. Welch, 173 F.3d 192, 202-03 (3d Cir. 1999).

We agree with the district court's conclusion that the award resolved all claims by ALT, including the CEP and RSU deferred compensation claims. Whatever ambiguity there may have been about whether RSGI was considered to be a formal party, we see no ambiguity as to whether the arbitrators considered and resolved the compensation claims. The same underlying conduct was the basis for ALT's claims in arbitration as its claims in court, and the matter was fully resolved. Numerous factors lead us to this conclusion.

-11-

First, the arbitrators stated they were resolving "all of the claims between the parties." Before the panel, ALT clearly raised the claims that they were owed compensation under the RSU and CEP plans, and it raised those claims against all respondents, not RSGI in particular. The arbitrators also considered evidence as to the merits of those deferred compensation claims, including from each of the claimants and from executives of Fleet, RSGI's parent. Cf. Witkowski, 173 F.3d at 202 (interpreting scope of arbitral award on the basis of the nature of "the evidence and testimony" submitted).

In addition, ALT had argued to the arbitrators that RSGI did not need to formally be a party to the arbitration for the CEP and RSU claims to be resolved. That was so because ALT could prevail on those claims against RSI on an alter ego theory, on the theory that RSI was liable under the terms of the arbitration contract, or on the basis that the CEP and RSU plans actually constituted compensation promised to ALT by RSI in exchange for services performed for RSI, thus rendering RSI liable for breach of contract.

It is also significant that the arbitrators' case summary, set forth in the award, unambiguously demonstrates that ALT's compensation claims were before the panel: "Claimants, former employees, allege violation of the WARN Act, RICO, fraud, breach of contract, negligence and breach of fiduciary duty. Claimants seek

-12-

unpaid compensation, severance, bonuses and attorneys' fees."[6]

In light of the manner in which ALT presented the RSU and CEP claims in its Amended Statement of Claims, the evidence ALT presented to the panel, and the arbitral award itself, it is most reasonable to interpret the award's scope--"all of the claims between the parties"--to include all of ALT's CEP and RSU claims. See Pujol v. Shearson/Am. Express, Inc., 829 F.2d 1201, 1206-07 (1st Cir. 1987) (relying on arbitration award's statement that it constituted a "full and final settlement" of all claims to determine panel had resolved all claims before it and that res judicata barred claimant's attempt to relitigate certain previously raised claims).

Our conclusion as to the award's scope is supported by the fact that, even though RSI on three occasions requested the arbitrators to modify the award to make clear that RSGI was not a party and that ALT's CEP and RSU claims remained unresolved, a majority of the arbitrators declined ALT's requests. Had the panel wished to so clarify its award, it had full authority to do so. Instead, faced with RSI's requests, the panel chose to let the original award stand.

The arbitrators did not specify the basis for the dollars awarded. It may be that the award included sums to the ALT

---

[6] The panel also noted that the claimants had withdrawn the breach of fiduciary duty claim.

claimants on the deferred compensation theory, or that it included no award, or that the award represents a compromise on those claims. On the evidence, the arbitrators could reasonably have determined that the defenses asserted by the respondents were valid and no award to any ALT claimant for the CEP and RSU deferred compensation was warranted. Alternatively, on the evidence the arbitrators could have adopted ALT's theory that RSI was RSGI's alter ego and from this concluded any award or denial of award as to ALT disposed of any issue as to RSGI and Fleet. We think the latter is a likely reading given how the issue was framed.

In any event, "an arbitrator has no duty to set forth the reasons underlying his award." Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 67 (1st Cir. 2000); see also Pujol, 829 F.2d at 1206 ("The failure of an arbitrator to make detailed supporting findings does not render such a final settlement ambiguous as to the resolution of the matters in controversy."). Whether liability was found and relief was awarded on the CEP and RSU claims or not, or in what amount, is less important than the conclusion that the claims were determined. That conclusion is plainly supported by the particular circumstances of ALT's position at arbitration, the arbitral award, and the panel's refusal to modify the award as ALT requested.

ALT argues that the arbitration panel could not possibly have decided the CEP and RSU claims because it had no jurisdiction

over Fleet or RSGI.  Cf. Wolf v. Gruntal & Co., 45 F.3d 524, 528 (1st Cir. 1995) (discussing the nature and limits of arbitral tribunal's authority).  This is not and could not be an assertion that the arbitrators lacked jurisdiction over the deferred compensation claims.  At most it is an assertion made to us that the arbitrators lacked jurisdiction over certain parties.

On these facts, this argument is unavailing.  Before the panel, ALT insisted that RSGI be considered a party, pointing both to the fact that they had named RSGI as a party from the start, and that RSGI was not prejudiced by its inclusion in the arbitration.[7] Having both submitted its claims to the panel and consented to confirmation of the award, ALT cannot now challenge the panel's authority to resolve its deferred compensation claims, including against RSGI.  See Int'l Chem. Workers Union, Local No. 566 v. Mobay Chem. Corp., 755 F.2d 1107, 1112 n.3 (4th Cir. 1985) ("'A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act.'") (quoting Ficek v. S. Pac. Co., 338 F.2d 655, 657 (9th Cir. 1964)).

It is true that the arbitrators never explicitly ruled on the motions to dismiss RSGI and Fleet, advanced by RSI and opposed

_____

[7]    ALT also presented an argument that RSGI's role as RSI's agent might itself confer the panel with jurisdiction over RSGI. Cf. InterGen N.V. v. Grina, 344 F.3d 134, 147-48 (1st Cir. 2003) (acknowledging that in certain circumstances principals and agents can bind each other to arbitration).

by ALT. The panel may well have thought it was not necessary to do so because RSI was a party before them and a full determination of the issues against RSI would have disposed of all claims against RSGI. Alternatively, the panel may have implicitly rejected the motions. See Fielding v. Tollaksen, 510 F.3d 175, 178-79 (2d Cir. 2007) (acknowledging view that "a district court's entry of judgment without ruling on a motion or argument is tantamount to a denial or rejection of that motion or argument.").

In any event, even if we were to assume that RSGI was not formally a party to the arbitration, ALT's argument that this entitles it to bring its CEP and RSU claims in federal court against RSGI still misses the point. Before the panel, the viability of ALT's CEP and RSU claims did not depend on RSGI being a party. Rather, ALT extensively developed the argument that it could pursue those claims against RSI itself and that RSI was a proxy for RSGI. Whether or not RSGI was deemed to be a party by the panel, we conclude the panel fully resolved ALT's CEP and RSU claims.

ALT now argues that the district court should not have construed the arbitral award itself, but should have remanded to the arbitrator. However, at the time of the request to confirm the award, ALT did not assert that there was an ambiguity that required remand before confirmation. Nor did ALT pursue other measures that were available in district court prior to confirmation of the

award.[8] Whether these failures would have been enough to waive the request to remand is not an issue we have to decide. This is so because ALT failed to raise the issue of remand when it opposed RSGI's summary judgment motion, and instead first raised the remand issue within its Motion for Reconsideration of the district court's order granting summary judgment on the deferred compensation claims. See Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011) ("When a party makes an argument for the first time in a motion for reconsideration, the argument is not preserved for appeal.").

---

[8] In addition to failing to timely raise the issue of remand, ALT also failed to pursue available remedies under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., for curing what it now argues are ambiguities within the arbitral award. The FAA outlines the appropriate procedures for challenging an arbitral award. Under 9 U.S.C. § 10, a district court may vacate an arbitral award upon request of a party to the arbitration; under § 11, it may modify or correct an award. It is significant that ALT elected not to pursue either of these procedures. The Supreme Court has recently made clear that, absent vacating or modifying an award under those provisions, an arbitral award must be enforced. See Hall Street Assocs. L.L.C. v. Mattel, Inc., 552 U.S. 576, 582, 586 (2008). A contrary interpretation of the FAA amounts to "fighting the text," id. at 588, and failing to regard 9 U.S.C. §§ 9-11 "as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway" risks rendering arbitration "merely a prelude to a more cumbersome and time-consuming judicial review process," id. (quoting Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003) (en banc)) (internal quotation mark omitted); see also Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906, 909 (6th Cir. 2000) ("An arbitrator's award will be binding on the parties unless they . . . seek to vacate, modify, or correct the award under [9 U.S.C.] §§ 10 or 11.").

Rather than pursue any of its available options prior to confirmation, ALT, for what appear to be strategic reasons, bet that it could convince the district court after confirmation of the award that the award read the way it wanted--to leave open the claims against RSGI.[9] ALT essentially seeks another bite at the apple after it submitted the relevant claims to arbitration; after the panel issued a "full and final" arbitral award that it refused to modify at ALT's request; after ALT failed to pursue the various available avenues for clarifying, vacating, or modifying that award; and even after the ALT claimants further ratified the award by accepting payments made on October 12, 2007 that constituted "full and final payment of the arbitration awards granted on September 12, 2007." We conclude ALT is not entitled to this second chance. Cf. Morani v. Landenberger, 196 F.3d 9 (1st Cir. 1999).

This conclusion is consistent with the doctrine of res judicata, specifically claim preclusion, and is in service of that doctrine's "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 329 (1st Cir. 2009) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322,

---

[9] RSGI also made strategic choices during the course of the arbitration and federal litigation.

326 (1979)) (internal quotation marks omitted).  Under federal law, a party asserting a res judicata defense must establish "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits."  Perez v. Volvo Car Corp., 247 F.3d 303, 311 (1st Cir. 2001) (quoting Gonzales v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994)) (internal quotation marks omitted).[10]

"An arbitration award generally has res judicata effect as to all claims heard by the arbitrators."  Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 585 (1st Cir. 1995); see also Wolf, 45 F.3d at 528 ("Final arbitral awards are entitled to the same preclusive effect as state court judgments, at least as concerns claims and issues actually raised.").  The arbitration panel had no duty to set forth their reasoning for the award, see Bernhardt v. Polygraphic Co. of Am., 350 U.S. 198, 203 (1956), and

---

[10]    The issue of whether state or federal law should govern a federal court's determination of the res judicata effect of an arbitral award is one that "has not been much developed."  18B Wright, Miller & Cooper, Federal Practice and Procedure § 4475.1, at 530 (2d ed. 2002).  Because New York preclusion law closely resembles federal preclusion law, there is no reason to belabor the point.  Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) ("Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'") (alteration in original) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)); see also Pike v. Freeman, 266 F.3d 78, 90 n.14 (2d Cir. 2001).  Nor do the parties raise this issue.

its choice not to do so "does not render [the] final settlement ambiguous as to the resolution of the matters in controversy," Pujol, 829 F.2d at 1206. Nor does the panel's choice bar application of res judicata. Id.

Nonetheless, it is true that there may be particular difficulties in applying res judicata to arbitral awards. See Postlewaite v. McGraw-Hill, 333 F.3d 42, 48 (2d Cir. 2003) ("Application of [collateral] estoppel following arbitration . . . may be problematic because arbitrators are not required to provide an explanation for their decision."); G. Richard Shell, Res Judicata and Collateral Estoppel Effects of Commercial Arbitration, 35 UCLA L. Rev. 623, 639-47 (1988) (discussing several ways in which courts have modified the traditional doctrine to fit unique characteristics of arbitration). In light of the complexities of applying the traditional res judicata doctrine to arbitration awards, it has been suggested that courts have discretion as to whether issue preclusion is appropriate. See 18B Wright, Miller & Cooper, Federal Practice and Procedure § 4475.1, at 518 (2d ed. 2002). We need not consider that suggestion, as we find it clear that the outcome we reach is consistent with the traditional requirements.

ALT concedes that it sought to raise the same cause of action in federal court as it raised to the arbitration panel. ALT only argues that the arbitral award did not constitute a final

judgment on the merits, and that the parties before the arbitration panel were not sufficiently identical to RSGI, the party against whom ALT brought its deferred compensation claims in federal court, for res judicata to apply.  We reject both arguments.

First, a judgment confirming an arbitral award "shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action." 9 U.S.C. § 13.  When a federal district court confirms an arbitration award, "that judgment has res judicata effect as to all matters adjudicated by the arbitrators and embodied in their award."  Apparel Art Int'l, Inc., 48 F.3d at 585.  Here, the arbitral award stated that it constituted a "full and final settlement" of all claims presented.[11]  As ALT admits, the claims it now asserts in federal court against RSGI are virtually identical to those claims asserted against RSI and RSGI in the arbitration.  Cf. Pujol, 829 F.2d at 1207.  And the "remedies sought in both proceedings [are] identical."  Norris v. Grosvenor Marketing Ltd., 803 F.2d 1281, 1286 (2d Cir. 1986).  For res judicata purposes, that award is thus sufficiently final as to the

_____

[11]  We acknowledge that even though the district court confirmed the arbitral award before dismissing ALT's CEP and RSU claims on the basis that they were barred by res judicata, the district court had not yet entered judgment confirming the award at the time it dismissed ALT's claims.  ALT does not raise any argument on appeal related to this issue.

merits of the claims ALT now seeks to litigate in court. See Pujol, 829 F.2d at 1206.

With regard to ALT's second argument, it is true that the arbitrators did not explicitly decide whether RSGI was a party. However, the arbitrators need not have decided RSGI's status for res judicata to apply, for the reasons we have explained. It is clear that RSGI either was a party to the arbitration or is at least bound by the arbitration award. See id. at 1207. We reach this conclusion without lingering over whether RSI and RSGI were in privity. "We, along with other circuits, have long held that claim preclusion applies if the new defendant is 'closely related to a defendant from the original action--who was not named in the previous law suit,' not merely when the two defendants are in privity." Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 17 (1st Cir. 2010) (quoting Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 10 (1st Cir. 2008)). RSI and RSGI were sufficiently related for claim preclusion purposes.[12]

Not only did ALT have a full opportunity to litigate these claims before the arbitrators, but they fully took advantage of that opportunity. If there were some unfairness to ALT, we

---

[12] Several other circuits have found privity to exist between parent and subsidiary corporations where, as here, one entity participated in arbitration and the other entity later faces the same claims in court. See, e.g., Anchor Glass Container Corp. v. Buschmeier, 426 F.3d 872, 879-80 (7th Cir. 2005); Mars Inc. v. Nippon Conlux Kabushiki-Kaisha, 58 F.3d 616, 619 (Fed. Cir. 1995).

would be hesitant to apply res judicata principles here, but we see no unfairness. That is especially so given ALT's strategic decisions. Res judicata serves to prevent exactly the kind of relitigation that ALT now seeks to undertake.

The judgment of the district court is affirmed.